IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DR. MELBA RIVERA DELGADO, et al., | |
| Plaintiffs, | |
| v. | CIVIL NO.: 12-1450 (MEL) |
| CHARLOS CHARDÓN, et al., | |
| Defendants. | |

**OPINION AND ORDER**

I. **PROCEDURAL HISTORY**

On June 18, 2012, Dr. Melba Rivera Delgado ("Dr. Rivera"), Mario A. Rivera Rivera, Keila M. Rivera Rivera, and Javier O. Rivera Rivera (collectively "plaintiffs") filed a complaint against Carlos Chardón in his personal capacity, Odette Piñero in her personal capacity, Jesús Rivera Sánchez in his personal capacity, Edward Moreno in his personal capacity and official capacity as Puerto Rico Secretary of Education,[1] Elia Colón Berlingeri in her personal capacity, and Eleuterio Álamo in his personal capacity (collectively "defendants"). ECF No. 1. Plaintiffs allege that defendants demoted Dr. Rivera and summarily suspended her without affording her a pre-suspension hearing, in violation of her rights pursuant to the First, Fifth, and Fourteenth Amendments to the United States Constitution, Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141 ("Article 1802"), and Article II and the Bill of Rights of the

---

[1] Although Edward Moreno is not currently the Secretary of Education in Puerto Rico, under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party."  Fed. R. Civ. Pro. 25(d); see also González Torres v. Toledo, 586 F.2d 858, 860 (1st Cir. 1978) (citation omitted) ("Although Superintendent Calero was sued in both his individual and his official capacities and no motion to substitute his successor was made after he retired, a successor is automatically substituted under Fed. Civ. P. 25(d).").

Constitution of the Commonwealth of Puerto Rico and P.R. Laws Ann. tit. 1, §§ 10-11. Id. at 14-16. They allege that defendants' actions against Dr. Rivera have caused her children, Mario Rivera, Keila Rivera, and Javier Rivera, to suffer emotional and mental damages in violation of Article 1802. Id. at 16-17. On March 26, 2013, the court dismissed plaintiffs' Fifth Amendment claims with prejudice, but denied defendants' request to dismiss plaintiffs' Fourteenth Amendment due process claim for failure to state a claim and denied without prejudice defendants' request to dismiss the case in its entirety on statute of limitations grounds. ECF No. 31. Pending before the court is defendants' motion for summary judgment and plaintiffs' response in opposition. ECF Nos. 51; 61. For the reasons that follow defendants' motion for summary judgment is granted.

## II.   UNCONTESTED FACTS[2]

Since 2003, Dr. Rivera has held a career position as a School Superintendent with the Department of Education ("DOE"). ECF Nos. 51-1, ¶ 1; 62, at 1, ¶ 1. She is a member of the Popular Democratic Party ("PDP") and ran for mayor of Canóvanas as a PDP candidate in the 1996 and 2000 elections. ECF No. 62, at 4, ¶ 1. Through a letter dated July 23, 2009, which Dr. Rivera received on July 28, 2009, Dr. Rivera was ordered to report to an administrative detail as School Director of Conchita Cuevas School in Gurabo for the 2009-2010 school year. ECF Nos. 51-1, ¶¶ 2, 5; 62, at 1-2, 5 ¶¶ 2, 5, 7. Neither her salary nor her status as a career employee at the DOE were affected by the order to report to an administrative detail. ECF Nos. 51-1, ¶ 3;

---

[2] Defendants did not submit a response to plaintiff's proposed uncontested facts (ECF No. 22-1, at 7-14). Thus, in accordance with Local Rule 56(e), plaintiff's proposed facts which are supported by specific citations to the summary judgment record are admitted due to defendants' failure to controvert them. D.P.R. Civ. R. 56(e). Several of plaintiffs' proposed facts are not supported by the evidence to which they cite, as discussed within this opinion. Furthermore, many of plaintiffs' proposed facts are supported only by citations to allegations in the complaint. See ECF No. 62, ¶¶ 2, 4-5, 8-13, 16, 25-26. While a verified complaint "ought to be treated as the functional equivalent of an affidavit" where the averments within it are made on personal knowledge and are admissible under the Federal Rules of Evidence, see, e.g., Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991), plaintiffs have not submitted a verified complaint in this case. See ECF No. 1. Thus, the proposed facts submitted only by a citation to the complaint have been disregarded.

62, at 1, ¶ 3. All superintendents in the DOE in Puerto Rico were sent similar letters, ordering them to report to administrative details to work as directors.[3] ECF Nos. 51-1, ¶ 7; 62, at 2, ¶ 7.

On February 25, 2010, Dr. Rivera received a letter signed by the Secretary of Education at the time, Odette Piñero Caballero, notifying her of a report from the Caguas Regional Director which indicated that Dr. Rivera had engaged in negligent and insubordinate conduct in the exercise of her duties as School Director of Conchita Cuevas School in Gurabo, enumerating various specific alleged incidents. ECF Nos. 51-1, ¶¶ 8-9; 62, at 2-3, ¶¶ 8-9. Via the February 25, 2010 letter, Dr. Rivera was summarily suspended with pay. ECF Nos. 51-1, ¶¶ 9-10; 62, at 3, ¶¶ 9-10. On June 25, 2010, acting Secretary of Education Jesús Rivera Sánchez informed plaintiff by letter that her administrative detail as School Director would end on June 30, 2010 and that she had to return to her position as School Superintendent of the School District of Gurabo, effective July 1, 2010.[4] ECF No. 51-1, ¶ 16; 62, at 3, ¶ 16. An administrative hearing was held on February 6, 2012. ECF Nos. 62, ¶ 21; 62-1, ¶ 21. Via a letter dated October 30, 2012, acting Secretary of Education Edward Moreno notified Dr. Rivera that she would be suspended without pay for a period of 60 days, ECF Nos. 51-1, ¶ 13; 62, at 3, ¶ 13, and the suspension without pay became effective on November 12, 2012.[5] ECF Nos. 51-1, ¶ 14; 62, at 3, ¶ 14. Dr. Rivera retired from her career position with the DOE on July 31, 2013. ECF Nos. 51-1, ¶ 20; 62, at 4, ¶ 20.

---

[3] Although plaintiffs admit that all DOE superintendents received letters ordering them to report to administrative details, it is plaintiffs' position that "unlike [Dr. Rivera], [New Progressive Party] superintendents were allowed to disregard their respective superintendent details." ECF No. 62, at 6, ¶ 17.  Id.

[4] Although plaintiff admits that she received this letter, she clarifies that she was not actually allowed to return to work and that she was informed by defendant Elia Colón Belingeri that the letter must have been sent to her in error. ECF No. 62, ¶ 16.

[5] The October 30, 2012 letter from Moreno indicates that plaintiff requested an informal administrative hearing and that on July 11, 2012 Administrative Judge Luis Benjamín Méndez rendered a report in which he recommended disciplinary procedures. ECF No. 56-4. However, no evidence has been brought to the court's attention with specific citations to the record regarding when Dr. Rivera requested an informal administrative hearing.

### III.   LEGAL STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). The plaintiff need not, however, "rely on *uncontradicted* evidence . . . . So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine

which version of the facts is most compelling." <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." <u>Griggs-Ryan</u>, 904 F.2d at 115 (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." <u>Greenburg v. P. R. Mar. Shipping Auth.</u>, 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## IV.   LEGAL ANALYSIS

### A.  Statute of Limitations

Section 1983 does not have its own statute of limitations; rather, "courts apply the state's personal injury statute of limitations to all § 1983 claims, regardless of the underlying law on which the claim is based." <u>Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jiménez</u>, 659 F.3d 42, 50 (1st Cir. 2011) (citing <u>Owens v. Okure</u>, 488 U.S. 235, 240-41 (1989)). In Puerto Rico, the one-year statute of limitations for tort actions applies to § 1983 claims. <u>Id.</u> (citing P.R. Laws Ann. tit. 31, § 5298(2)). Although local law governs the duration of the statute of limitations, federal law determines when the statute of limitations begins to run. <u>Id.</u> (citing <u>Gorelik v. Costin</u>, 605 F.3d 118, 121 (1st Cir. 2010)). "Section 1983 claims accrue when the plaintiff knows, or has reason to know of the injury on which the action is based, and a plaintiff is deemed to know or have reason to know at the time of the act itself

and not at the point that the harmful consequences are felt." Id. (internal quotation marks and citations omitted).

At the motion to dismiss stage, defendants raised an argument that plaintiffs' claims are barred by the statute of limitations, pointing out that over a year transpired between the dates that Dr. Rivera was allegedly demoted and suspended, on July 28, 2009 and February 25, 2010, respectively, and the date the complaint was filed, June 8, 2012. ECF No. 26, at 13-17. Although more than a year transpired between the alleged adverse employment actions and the filing of the complaint, plaintiffs raised an argument that the statute of limitations was tolled when they filed a state cause of action "with the Commonwealth of Puerto Rico's Superior Court of Caguas Number EAC2011-065(401)," alleging civil rights violations. ECF No. 28, at 12.[6] When the statute of limitations is tolled, "the one year period is reset and begins to run from the beginning." Ramos v. Román, 83 F. Supp. 2d 233, 241 (D.P.R. 2000) (citing Rodríguez Návarez v. Nazario, 895 F.2d 38, 43 (1st Cir. 1990). Plaintiffs averred that the case in Commonwealth court was dismissed without prejudice on June 14, 2011, making the June 8, 2012 complaint in this case timely filed. Id. In denying defendants' motion to dismiss on statute of limitations without prejudice, the court stated:

> Filing an action 'does not toll the statute of limitations for all claims arising out of the same facts' . . . . [T]he statute of limitations is only tolled for actions that are identical to the ones in the original complaint. Rodríguez-García[v. Municipality of Caguas, 354 F.3d 91, 97 (1st Cir. 2004)] (quoting Fernández v. Chardón, 681 F.2d 42, 49 (1st Cir. 1982)). In addition, both the original claim and the new claim must seek the same relief. Id. at 98. Plaintiff Rivera fails to advance an argument as to why the claims are identical, and defendants fail to provide an argument for why the claims are not identical. (See Docket Nos. 7, 26 & 28.) At

---

[6] Plaintiffs also argued that the continuing violations doctrine applied to the allegations in the complaint, but the court rejected this argument, holding that the continuing violations doctrine is inapplicable to this case. See ECF No. 31, at 13-14.

this stage, therefore, the Court is unable to determine whether the Commonwealth case in fact tolled the statute of limitations.

ECF No. 31, at 15. As alluded to in the court's opinion regarding the motion to dismiss, the "identicality requirement has three facets": the claims "must seek the same form of relief"; they must be based on the same substantive claims"; and they "must be asserted against the same defendants in the same capacities." Alamo-Hornedo v. Puig, 745 F.3d 578, 581-82 (1st Cir. 2014) (citation and internal quotation marks omitted). In seeking to demonstrate that the one-year statute of limitations was subject to tolling, the burden is on plaintiffs to satisfy the three facts of the identicality requirement. Id.; see also García Colón v. García Rinaldi, 340 F. Supp. 2d 113, 123 (D.P.R. 2004) (citing Tokio Marine and Fire Ins. v. Pérez & Cia, 142 F.3d 1, 3 (1st Cir. 1998)).

Now, at the summary judgment stage, the parties have still not placed the court in a position to evaluate whether the claims that were presented in Commonwealth court are identical to those in the complaint in this case, such that the statute of limitations was tolled. Defendants largely repeat the arguments contained in their motion to dismiss, adding only that plaintiffs have not produced the complaint in the Commonwealth case. In response, plaintiffs briefly argue that in that complaint "against the Department of Education and the same defendants . . . [Dr. Rivera] alleged the same facts, attempted the same causes of action (Civil Rights/ 42 USCA [§] 1983/First Amendment/Political Discrimination/Due Process/Art 1802 Puerto Rico Civil Code) and requested the same remedies (monetary compensation and injunctive relief) as now sought in the instant federal case." ECF No. 61, at 3. Plaintiffs do not cite to the complaint from the Commonwealth case in support of their argument that the claims are identical. Instead, they cite to a portion of a sworn statement under penalty of perjury from Dr. Rivera that states:

> [O]n February 18, 2011, through my attorney Vanessa Carballo-Santiago, I filed a complaint alleging civil rights violations for

> political discrimination against the Department of Education and
> the same defendants in the instant case in the Superior Court of
> Caguas, Civil No. EAC2011-0065. . . . This case was eventually
> voluntarily dismissed on October 6, 2011.

ECF No. 82-1, ¶¶ 27-28.

Given that Dr. Rivera has sworn that she filed the local complaint on February 18, 2011, it is evident that the one-year statute of limitations bars her claim that she was "demoted" on the basis of political discrimination, regardless of whether the filing on the Commonwealth case tolled the statute of limitations for her claims related to the suspension. Plaintiffs allege that Dr. Rivera received the instructions to report to an administrative detail as School Director of the Conchita Cuevas School on July 28, 2009, and that fact is uncontested for summary judgment purposes. Accordingly, the statute of limitations for § 1983 claims pertaining to the administrative detail, which she purports was a demotion, began to run at the time defendants notified her of the administrative detail, in July, 2009. Juarbe-Jiménez, 659 F.3d 42, 50; see also Alamo-Hornedo, 745 F.3d at 581 ("[A] claim accrues when the employee is given notice of the adverse employment decision (citations omitted)). Thus, the statute of limitations was not tolled with the filing of her complaint in the Superior Court of Caguas on February, 18, 2011—it had already expired by that time. Accordingly, plaintiffs' argument that the filing of such complaint tolled the statute of limitations for the "demotion" claim fails and all claims related to Dr. Rivera's "demotion" are dismissed.

With respect to Dr. Rivera's claim that the paid suspension commencing on February 25, 2010 was an act of political discrimination and that defendants violated her rights to due process in imposing that suspension, the evidence plaintiffs offer in support of their identicality argument falls short of establishing that the previous case tolled the statute of limitations. The portion of Dr. Rivera's statement to which plaintiffs' have cited, see ECF No. 82-1, ¶¶ 27-28, does not show

that each of the causes of action in the two cases are the same. Dr. Rivera mentions only political discrimination in the sworn declaration, not procedural due process or Article 1802. Next, she does not indicate whether her political discrimination cause of action was based on federal law, local law, or both. Moreover, Dr. Rivera does not indicate what facts she alleged in the complaint before the Superior of Court Caguas and does not even include the conclusory statement contained in her memorandum that the case was based on the "same facts." There is no mention in Dr. Rivera's declaration of whether or not her local claim was based on a suspension, or any indication of what her alleged adverse employment action was in the Commonwealth case. Furthermore, her sworn statement is silent as to the relief she requested in the local case and does not indicate the capacities in which defendants were sued in that case, either. In sum, plaintiffs' evidence falls short of showing that the local case was identical as to any of the three prongs of the identicality requirement. Therefore, because plaintiff was suspended with pay on February 25, 2010—more than two years prior to the date the complaint in the case at bar was filed—and plaintiffs have not met their burden of showing that it was subject to tolling, all claims related to her suspension, along with all Article 1802 derivative claims based on the suspension are dismissed. Moreover, even assuming for argument's sake that plaintiffs had satisfied the identicality requirement for the suspension-related political discrimination and procedural due process claims in this case, for the reasons that follow those claims do not survive summary judgment.

### B.  Procedural Due Process

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1. Such property rights are not created by the Constitution, however, but by "existing rules or

understandings that stem from an independent source such as state law." Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 538 (1985).  Dr. Rivera claims that she was suspended without "even a minimal right to be heard before the suspension came into effect" and that although she requested a post-suspension hearing, as of the date the complaint she had been suspended for over two years without an administrative decision. ECF No. 1, at 12, 15; see also ECF No. 62-1, ¶ 9, 25-26, 30.

In cases where an employee is suspended *with* pay, due process does not require a pre-suspension hearing.[7] Collins v. Uni. of New Hampshire, 664 F.3d 8, 17 (1st Cir. 2011); and Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 9-10 (1st Cir. 2003); see also Price v. Mount Wachusett Community College, Civ. No. 11-10922-FDS, 2012 WL 3596859, at *4 (D. Mass. Feb. 17, 2012); Cronin v. Town of Amesbury, 895 F. Supp. 375, 386 (D. Mass. 1995) aff'd, 81 F.3d 257 (1st Cir. 1996). Although a pre-suspension hearing is not required to suspend an employee with pay, the First Circuit Court of Appeals has stated, in dicta, that "it is conceivable that a very long and open-ended paid suspension might function so much like a termination that some due process protection might attach." Torres-Rosado, 335 F.3d at 10 (noting that "[n]umerous courts have held that paid suspensions could be imposed without the sorts of procedures the Constitution demands for terminations of career employees" and finding that a five-month paid suspension was too short to trigger due process concerns). Based on the uncontested facts, Dr. Rivera was suspended with pay and without process for nearly two

---

[7] For cases involving unpaid suspensions, the United States Supreme Court held in Gilbert v. Homar that due process does not *always* require a pre-suspension hearing. 520 U.S. 924 (1997). Instead, in order to determine the process due to an employee suspended without pay the court must balance (1) the private interest at stake, including the length and finality of the deprivation; (2) the risk of erroneous deprivation of the interest; and (3) the government's interest in immediately suspending the employee. Id. Although Dr. Rivera was ultimately suspended without pay for a sixty-day period, her unpaid suspension occurred after the complaint was filed. Plaintiffs have not alleged that Dr. Rivera was deprived of adequate notice or of an opportunity to be heard prior to the unpaid suspension; the allegations in the complaint are limited to the suspension that began on February 25, 2010, which according to the uncontested facts was a suspension *with* pay.  See ECF No. 1.

years—from February 25, 2010, through February 6, 2012—before receiving a post-suspension hearing. After the hearing, she remained suspended with pay for an additional eight months, until October 30, 2012, for a total suspension with pay of over thirty-two months. Although the First Circuit has left open the possibility that a long, paid suspension could trigger due process protections, it has yet to conclusively decide the matter. See Collins, 664 F.3d 17 ("We did suggest in Torres-Rosado that 'a very long or open-ended paid suspension might function so much like a termination that some due process protection might attach.' However, as in Torres-Rosado, '[w]e need not consider that prospect here.'" citing Torres-Rosado, 335 F.3d at 10).[8]

The consensus among courts that have directly addressed the issue is that a "[s]uspension with pay does not raise due process concerns." Hicks v. City of Watonga, Okl., 942 F.2d 737, 746 n.4 (10th Cir. 1991); see also O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005); Swick v. City of Chicago, 11 F.3d 85, 87 (7th Cir. 1993); Royster v. Bd. of Trustees of Anderson Cnty. Sch. Dist. No. Five, 774 F.2d 618, 621 (4th Cir. 1985) cert. denied, 475 U.S. 1121 (1986); Cannon v. Beckville Independent School District, 709 F.2d 9 (5th Cir. 1983); Bertram v. Metro. Transp. Auth., No. 13 CIV. 338 RA, 2014 WL 748933, at *5 (S.D.N.Y. Feb. 26, 2014) ("Courts have repeatedly held that suspension with pay does not constitute a deprivation of a constitutionally protected property interest."); Hunt v. Prior, 236 Conn. 421, 438, 673 A.2d 514, 524 (1996) ("[C]ourts have consistently concluded that a suspension with pay does not implicate an employee's constitutionally protected property interest." (collecting cases)); but see Viola v. Borough of Throop, No. 3:06CV1930, 2010 WL 4942255, at *5 (M.D. Pa. Nov. 30, 2010) aff'd,

---

[8] Assuming for argument's sake that very long paid suspensions do trigger due process protections, is unclear what would satisfy the standard of "some" due process protection. In this case, Dr. Rivera did not receive a pre-suspension hearing or a prompt hearing after her paid suspension began; however, Dr. Rivera did receive a lengthy letter from the Secretary of Education at that time, Odette Piñero, notifying her of the numerous alleged incidents of "negligent and inappropriate behavior in the performance of" her duties, and of the provisions of the Department of Education regulations and the Puerto Rico Civil Code with which Dr. Rivera's behavior was purportedly in conflict. See ECF No. 56-2. The letter also notified her of her right to request an informal administrative hearing, which she ultimately did.

454 App'x 51 (3d Cir. 2011) (finding "that only a minimal private interest" was affected by suspension with pay). Although none of these cases involves a paid suspension of over one year and some deal with much shorter suspensions, their rationales for holding that a paid suspension does not implicate due process protections are not limited to brief suspensions. In Loudermill, the United States Supreme Court suggested that if an employer "perceives a significant hazard in keeping [an] employee on the job," that employee may immediately suspend the employee with pay without providing a pre-termination hearing. Loudermill, 470 U.S. at 544-45. As the Second Circuit Court of Appeals has noted: "[N]o court has held that an employee on fully paid leave has been deprived on a property right merely by virtue of being relieved of his job duties. Indeed, such a position would seem to run afoul of Loudermill." O'Connor, 426 F.3d at 199 (citing 470 U.S. at 544-45). While Loudermill does not directly foreclose the possibility that some process might be due in the case of a long, unpaid suspension, it does not make a distinction with regard to short and long paid suspensions. Moreover, the rationale espoused by the Second Circuit that "an employee who is on leave and receiving his normal salary is not deprived of a property right merely [by] virtue of being deprived of his job duties," MacFall v. City of Rochester, 495 F.App'x 158, 160 (2d Cir. 2012) (quoting O'Connor, 426 F.3d at 199), is applicable both to brief paid suspensions and paid suspensions of extended durations, as it pertains to whether an employee has a property interest in the non-economic dimensions of employment. Similarly, the Seventh Circuit Court of Appeals has come the conclusion that a public employee's property interest in his employment is tied to the economic benefits of that position, not to the right to perform the duties and responsibilities related to the position: "We do not think that 'property' within the sense of the amendment should be extended to the purely dignitary or otherwise nonpecuniary dimensions of employment." Swick, 11 F.3d at 87.

In the absence of a contrary holding from the First Circuit Court of Appeals and the U.S. Supreme Court, the court will follow the prevailing view regarding paid suspensions—that a government employee does not have a protected property interest in the "nonpecuniary dimensions of employment." Based on the uncontested facts, Dr. Rivera was suspended *with* pay on February 25, 2010. She has brought no evidence to the court's attention that she was otherwise financially affected by her paid suspension or that she lost any benefits of her position—other than the right to perform her job duties—until she was suspended without pay for 60 days, after the administrative hearing had taken place. Therefore, her Fourteenth Amendment due process claim is dismissed, with prejudice.

### C.  First Amendment Political Discrimination

The First Amendment to the United States Constitution embodies the right to be free from political discrimination. Barry v. Moran, 661 F.3d 696, 699 (1st Cir. 2011). The First Circuit Court of Appeals has held that that right prohibits government officials from "taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." Ocasio–Hernández v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011) (internal citations omitted). A *prima facie* case of political discrimination based on the First Amendment consists of four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." Lamboy–Ortiz v. Ortiz–Vélez, 630 F.3d 228, 239 (1st Cir. 2010). "Once made, the defendant may then rebut that showing with what is commonly referred to as the Mt. Healthy defense: by proving by a preponderance of the evidence that the governmental agency would have taken the same

action," regardless of plaintiff's political affiliation. Reyes-Pérez v. State Ins. Fund Corp., 755 F.3d 49, 54 (1st Cir. 2014) (citing Díaz-Bigio v. Santini, 652 F.3d 45, 52 (1st Cir. 2011)). Defendants argue that plaintiffs cannot establish a *prima facie* case of political discrimination, arguing that she cannot show that she experienced an adverse employment action for which the political affiliation was a substantial or motivating factor.[9]

Plaintiffs have not cited to sufficient evidence for a rational jury to conclude that her politics was a substantial or motivating factor in the decision to order to suspend her employment. First, they propose as an uncontested fact that defendant Carlos Chardón "told her once that he was watching her and did not trust her because she was a PDP [member]." ECF No. 62, ¶ 15. Dr. Rivera's sworn statement that plaintiffs cite in support of the proposed fact, however, is less explicit than their claim that Chardón told her he did not trust her *because* she was member of the PDP. Her declaration states that at a meeting of over 100 superintendents and supervisors in July, 2009, Chardón told her over a microphone that she was being monitored and followed. ECF No. 62-1, ¶ 5. It also states that he told her that he knew that she was a member of the PDP and that "he was only willing to meet with [her] and a group of Superintendents so long as there was a member of his own party present, namely a NPP Superintendent." Id. ¶ 6. Even taking plaintiffs' characterization of Dr. Rivera's sworn declaration as a given, these statements from July, 2009 do not pertain to her suspension in February, 2010. While they might be relevant to the inquiry of whether her alleged "demotion" was motivated by political animus, based on the date Dr. Rivera swore that she filed a complaint in the Superior Court of Caguas the statute of limitations was not subject to tolling for that claim, but had expired prior to the inception of the local case, as previously discussed. Importantly, Dr. Rivera states in her sworn declaration that Odette Piñero, who succeeded Chardón as Secretary of Education, sent her a letter suspending

---

[9] Defendants have not put the issue of their knowledge of Dr. Rivera's political affiliation in controversy.

her employment. Id. ¶ 9. No evidence has been brought to the court's attention with specific citations to the record that Chardón was involved in the decision to suspend her or that he was actually the Secretary of Education at the time of her suspension.

In reference to her paid suspension, Dr. Rivera states in her declaration that:

> [t]he political animus was obvious because[] there is a familial relationship between Defendant Piñero and Dr. Elia Colón Berlingeri, the then Regional Director of Caguas, (the region I was assigned as superintendent). Defendant Piñero was married to the Mayor of Barranquitas (a member of the NPP) who is the brother of Dr. Elia Colón Berlingeri. So the two were sister-in-laws [*sic*].

Id. ¶ 11. Plaintiffs have not cited to this paragraph of Dr. Rivera's sworn declaration; however, even taking it into account for purposes of evaluating defendants' motion for summary judgment would not enable plaintiffs to make a *prima facie* showing that Dr. Rivera's suspension was motivated by political animus. Although it is clear from the context of Dr. Rivera's sworn statement that she is referring to the political animus behind the decision to suspend her, her explanation as to why the political motivation was "obvious" does not relate to the suspension itself, but to Piñero's familial ties and political connections. Taking Dr. Rivera's assertions that Piñero's husband was Mayor of Barranquitas and that Piñero was the sister-in-law of defendant Elia Colón as true would not permit the jury to make a reasonable inference regarding the impetus for Dr. Rivera's suspension without engaging in speculation.

Next, plaintiffs propose that unlike Dr. Rivera, NPP superintendents "were allowed to disregard their respective administrative details, were not sanctioned, and some were promoted." ECF No. 62, ¶ 17. This proposal is unsupported by the unsworn statement of an individual named Pablo Colón to which plaintiffs cite in furtherance of the proposed fact. Colón, an Auxiliary Superintendent for the Patillas' School District until 2009, was placed on an administrative detail as Director of the Juan Alemani School for the Guayama School District.

ECF No. 62-3, at ¶¶ 1-3. Colón notes that according to Chardón, Dr. Rivera was summarily suspended "for not attending / running the high school that she was appointed to." Id. ¶¶ 6. Colón also states that "[s]everal . . . Superintendents, such as María Virgen López and Norma Marrero, did the same functions as Mrs. Rivera, being a director and handling District affair, who did not suffer the consequences that suffered Mrs. Rivera." Id. ¶¶ 7-8. Colón concludes that "[t]o [his] understanding Mrs. Rivera was performing her duties as Director for the Dra. Conchita Cuevas High School as instructed by the then Secretary of Education." Id. ¶ 9. Colón's declaration is silent as to the political affiliations of the two superintendents to whom he refers, María Virgen López and Norma Marrero. The declaration does not indicate that they were in fact permitted to "disregard their respective administrative details," nor does Colón claim in his declaration that those individuals were promoted. Overall, no reasonable inference can be drawn that political animus was a substantial or motivating factor for Dr. Rivera's suspension from Colón's declaration. At most, his declaration could evince that the DOE's explanation for suspending her—that she refused to report to her detail as School Director—is untrue. Nevertheless, it would not permit a jury to infer that that she was suspended as a result of political animus.

Plaintiffs' last argument is that Dr. Rivera was not permitted to return to work after her suspension under an NPP administration, and did not return to work until 2013, when the PDP "assumed power." ECF No. 61, at 8. Dr. Rivera was originally suspended with pay for an indefinite duration. The fact that Dr. Rivera's suspension did not end until after the change in administration would not enable a reasonable factfinder to conclude that her political affiliation was a substantial or motivating factor for the decision to suspend her without pay almost three years prior to the change in administration. No reasonable inference could be drawn as to her

employer's motivations to suspend her in February, 2010 from the fact that her suspension ended after the NPP was no longer in power, and sending the issue to the jury based on that fact would invite the jury to speculate as to her employer's motivations for suspending her. Moreover, the elections in question were not held until November 6, 2012—that is, after the administrative hearing was held regarding Dr. Rivera's suspension and after a sixty-day suspension was imposed on her.[10] Based on Dr. Rivera's own sworn declaration, the decision to suspend her without pay was sent to her by defendant Edward Moreno Alfonso by certified mail, return receipt requested, on November 2, 2012. Taking Dr. Rivera's own assertion as true, defendants could not have been aware that the PDP had won the elections at the time that the decision to suspend her without pay was made, undermining her theory that her unpaid suspension "was calculated so [her] continued absence from DOE would [coincide] with the eventual return of the PDP in 2013." ECF No. 62-1, ¶ 38. Drawing all reasonable inferences in favor of Dr. Rivera, she has not adduced sufficient evidence to meet the *prima facie* standard for showing that her political affiliation was a substantial or motivating factor for the decision to suspend her.

### D.  Qualified Immunity

Defendants raise a brief argument that plaintiffs' claims should be dismissed on qualified immunity grounds:

> [C]o-defendants acted, at all times, within the established framework of their functions, duties and authority, and they neither negligently nor intentionally violated any of plaintiff's constitutional rights. Therefore the doctrine of qualified immunity is applicable to them.

---

[10] Pursuant to Federal Rule of Evidence 201, judicial notice can be taken of the dates that public general elections take place and the dates that public officials were sworn into office. See Piccolo v. N.Y.C. Campaign Fin. Bd., No. 05-CV-7040, 2007 WL 2844939, at *2 n.2 (S.D.N.Y. Sept. 28, 2007) (noting that the court would take judicial notice of "matters of public record . . . such as election dates and results"); Arnold v. New Jersey, Civ No. 03-3997 (WHW), 2007 WL 1381757, at *8 n. 4 (D.N.J. 2007) ("The Court takes judicial notice . . . of the dates on which these public officials were sworn into office." (collecting cases)); see also Mills v. Green, 159 U.S. 651, 657-58 (1895) (taking judicial notice of date public election was held).

ECF No. 51, at 15. It appears from defendants' argument that they misapprehend the doctrine of qualified immunity. To determine if a public official is entitled to qualified immunity, the court examines: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004) (citation omitted). Defendants raise no argument that that the First Amendment right to be free from political discrimination was not clearly established at the time of the alleged conduct or that a reasonable, similarly situated officer would not have understood the alleged conduct to violate Dr. Rivera's constitutional rights. Given that plaintiffs' claims are dismissed both on statute of limitations grounds and on the merits, however, defendants' qualified immunity argument is moot.

### E.  Supplemental Claims

Defendants raise two arguments for the dismissal of plaintiffs' supplemental law claims pursuant to Article II and the Bill of Rights of the Constitution of the Commonwealth of Puerto Rico and Article 1802. As to the Article 1802 claims, defendants argue that in view that the claims of Dr. Rivera's relatives, Mario A. Rivera Rivera, Keila M. Rivera Rivera, and Javier O. Rivera Rivera are contingent upon the success of Dr. Rivera's federal claims, the relatives' claims ought to be dismissed. Indeed, the claims of employees' relatives pursuant to Article 1802 "[are] wholly derivative and, thus, [their] viability is contingent upon the viability of the underlying employment discrimination claim." Costa-Urena v. Segarra, 590 F.3d 18, 30 (1st Cir. 2010) (vacating verdict in favor of an employee's spouse given the infirmity of the jury's verdict on the underlying political discrimination claim" pursuant to § 1983). Given that the complaint does not allege any tortious conduct that might otherwise be actionable under Article 1802, their

Article 1802 derivative claims are dismissed with prejudice in light of the dismissal of Dr. Rivera's § 1983 claims.

With regard to the remaining supplemental claims brought under the Constitution of the Commonwealth of Puerto Rico and P.R. Laws Ann. tit. 1, §§ 10-11, defendants request that the court decline to exercise supplemental jurisdiction in the event that all federal claims have been dismissed. If all federal claims are dismissed prior to trial, then the state law claims "'should be dismissed as well.'" Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)). Because defendants are entitled to summary judgment on plaintiffs' federal claims, plaintiffs' remaining state law claims are dismissed without prejudice. See Dávila-Feliciano v. Puerto Rico State Ins. Fund Corp., 754 F. Supp. 2d 351, 367 (D.P.R. 2010).[11]

**V.   CONCLUSION**

Based on the foregoing analysis, defendant's motion for summary judgment is **GRANTED** and all claims in this case are dismissed. Dr. Rivera's First and Fourteenth Amendment claims under § 1983 are dismissed with prejudice on statute of limitations grounds and, in the alternative, because they cannot survive summary judgment on the merits. The Article 1802 derivative claims brought by Dr. Rivera's children are also dismissed with prejudice, as their viability is contingent on the success of Dr. Rivera's § 1983 claims. All other supplemental

---

[11] Defendants argue that Dr. Rivera's request for injunctive relief in the form of reinstatement to her career position with back pay is moot because she resigned from that position effective July 31, 2013. ECF No. 51, at 2. In response to this argument, plaintiffs agree that the request for reinstatement is moot because she retired from her position, but indicate that Dr. Rivera is nevertheless entitled to other injunctive relief, including backpay "corresponding to the sixty days without pay" she experienced, "a ruling that the adverse employment actions taken against [Dr. Rivera] were unwarranted," and "that her personnel record be expunged of all documentation pertaining to the discriminatory adverse personnel actions taken against her". ECF No. 61, at 2. First, a review of the complaint reveals that Dr. Rivera did not request backpay. Indeed, as previously noted within this opinion she had not yet learned of her 60 day unpaid suspension at the time plaintiffs filed the complaint. Regardless, in view that all of her federal causes of actions are dismissed, the controversy regarding Dr. Rivera's requests for injunctive relief is moot.

law claims are dismissed without prejudice, as the court declines to exercise supplemental jurisdiction in light of the dismissal of all federal claims in this case.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 18th day of August, 2015.

s/Marcos E. López
U.S. Magistrate Judge